**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wainsworth Marcellus HALL,**
**Defendant–Appellant.**

**No. 94–5739.**

United States Court of Appeals,
Fourth Circuit.

Argued June 3, 1996.

Decided Aug. 19, 1996.

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Fernando Groene, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and NIEMEYER and HAMILTON, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge NIEMEYER and Judge HAMILTON joined.

## OPINION

WILKINSON, Chief Judge:

Wainsworth Marcellus Hall was convicted in 1994 of three offenses: (1) conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana, 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise (CCE), 21 U.S.C. § 848; and (3) conspiracy to launder money, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 371. Hall appeals his convictions on four grounds—that the jury instructions on the CCE count were erroneous, that notes of interviews with government witnesses should have been examined *in camera* by the district judge, that his trial should have been severed from that of his codefendants, and that the drug amounts attributed to him were overstated. We disagree with each of Hall's contentions and affirm the judgment of the district court.

I.

Appellant Hall and his brother, Peter Hall, ran a cocaine distribution network between New York City, Virginia, and various other eastern seaboard states. Hall, who lived in New York, regularly sent powdered cocaine to his brother in Tidewater, Virginia, who then cooked the powder into cocaine base and distributed it throughout the state. Hall also distributed cocaine powder and base in New York.

A courier for the Hall organization, John Stokes, was interviewed by government attorneys and law enforcement officers during the preparation of this case. Hall requested production of the notes taken at these interviews, but the trial court denied the request on the grounds that Stokes had not reviewed or adopted the documents. Similarly, the court denied Hall's request for production of notes taken during the interview of another

of Hall's drug associates, Christopher Hamlin.

Hall was tried along with two co-conspirators, one of which pled guilty part way through trial and the other of which was acquitted of all charges. A number of Hall's co-conspirators, including several drug couriers, testified against him at trial. Many of them fingered Hall as a leader in the drug ring.

The jury found Hall guilty on the three charges. Hall received a sentence of life in prison.

## II.

■ The elements of a continuing criminal enterprise violation are well established. The government must prove that: (1) the defendant committed a felony violation of federal narcotics laws; (2) the crime was part of a "continuing series" of such violations; (3) the series of violations was undertaken in agreement with at least five other persons; (4) the defendant managed, supervised, or organized these other persons; and (5) the defendant received substantial income or resources from the enterprise. *United States v. Ricks,* 882 F.2d 885, 890–91 (4th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 841 (1990); *see* 21 U.S.C. § 848.

Hall contends that the jury instructions on the CCE count were defective in several respects. We shall address his challenges in turn.

### A.

■ Hall first claims that the judge failed to properly explain the "continuing series" element of the CCE offense. A "continuing series" consists of at least three related felony narcotics violations, including the one charged. *See United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984) (citing cases), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Here the district judge instructed the jury that it must decide whether a "continuing series" had been proven, and further explained as follows:

[Y]ou must find beyond a reasonable doubt that ... the conduct charged in this count, together with any additional violations of

the drug laws, constituted a total of three or more violations of the federal drug laws committed over a period of time with a single or similar purpose.

Hall argues that the judge erred by failing to instruct the jury that it must unanimously agree that the three or more drug violations were "related" to each other.

We disagree. The district court explained to the jury that the federal narcotics violations must constitute a "continuing series" and this was enough. There was no need to instruct on any requirement of "relatedness." Hall's argument ignores the fact that the very phrase, "continuing series," denotes related events. Moreover, the instructions required the jury to find three offenses "committed over a period of time with a single or similar purpose," which is tantamount to requiring that they be related to one another. Offenses can hardly share a "similar purpose" if they are not connected. There was no reason for the district court to elaborate on a term already defined by the statute and amply covered in the instructions.

■ In fact, we are especially loathe to find reversible error when Hall received a more generous instruction than the statute requires. The district judge instructed the jury to "unanimously agree on which three acts constitute[d] the continuing series of violations." The statute, however, demands only that the jurors agree that there was a continuing series, not that they agree on which offenses make up that series. Specifically, the statute requires a finding of a felony offense which is part of "a continuing series of violations." Under the plain meaning of this section, as long as each juror is satisfied in his or her own mind that the defendant committed acts constituting the series, the requisite jury unanimity exists. As the Seventh Circuit noted:

It seems clear from the statute that the point of the CCE is to impose special punishment on those who organize and direct a "continuing" drug distribution system, the nature of which is evidenced by proof of the defendant's commission of a threshold number of criminal drug violations—a "continuing series." ... [W]e

hold that once each juror finds beyond a reasonable doubt that a CCE defendant committed at least two predicate offenses the purpose of the CCE is satisfied, and the defendant is suited for punishment consistent with the statute. We do not require that the jurors unanimously agree as to the same predicate acts; this we feel will result in unjustified acquittals frustrating the important policy goals of the CCE. *United States v. Canino*, 949 F.2d 928, 947–48 (7th Cir.1991) *cert. denied*, 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992).[1]

In short, we cannot accept Hall's claims of error with respect to the "continuing series" element of the CCE offense.

## B.

◼ Hall also argues that the jurors were confused about the five-person element of the CCE charge. The jury instructions on this element stated:

The government must prove beyond a reasonable doubt ... [that] the defendant Wainsworth Marcellus Hall and at least five or more other persons were part of an agreement or joint action to commit the continuing series of violations of the federal narcotics laws.

Hall asserts that the jury should have been told that it must be unanimous as to which five people satisfied this element.

This contention is simply wrong. Nothing in the statute requires jury unanimity on *which* five people were in agreement, as long as each juror finds that *some* five persons were in agreement. In fact, we have so held. *United States v. Tipton*, 90 F.3d 861, 885–86 (4th Cir.1996). Almost every other circuit has held likewise. *See United States v. Rockelman*, 49 F.3d 418, 421 (8th Cir.1995); *United States v. Harris*, 959 F.2d 246, 255 (D.C.Cir.), *cert. denied*, 506 U.S. 932, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992); *United States v. Moorman*, 944 F.2d 801, 803 (11th Cir.1991), *cert. denied*, 503 U.S. 1007, 112 S.Ct. 1766, 118 L.Ed.2d 427 (1992); *United*

*States v. English*, 925 F.2d 154, 159 (6th Cir.), *cert. denied*, 501 U.S. 1210, 111 S.Ct. 2810, 115 L.Ed.2d 983 (1991); *United States v. Linn*, 889 F.2d 1369, 1374 (5th Cir.1989), *cert. denied*, 498 U.S. 809, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *United States v. Jackson*, 879 F.2d 85, 87–88 (3d Cir.1989); *United States v. Tarvers*, 833 F.2d 1068, 1074–75 (1st Cir.1987); *United States v. Markowski*, 772 F.2d 358, 364 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). *But see United States v. Jerome*, 942 F.2d 1328, 1331 (9th Cir.1991). The district court's instruction was thus accurate.

## C.

◼ Finally, Hall objects to the instruction on the requirement that he supervised or organized the other members of the enterprise. That instruction included the following:

[T]he government must prove ... beyond a reasonable doubt ... [that] [t]he defendant Wainsworth Marcellus Hall was an organizer of [ ] five or more other persons or occupied a management or supervisory position with respect to these five or more other persons....

. . . .

The term organizer and the term supervisory position and position of management are to be given their usual and ordinary meanings. These words imply the exercise of power or authority by a person who occupies some position of management or supervision.

According to Hall, the jury should further have been told that individuals who had only buyer-seller relationships with Hall were not supervised or organized by him. *United States v. Butler*, 885 F.2d 195, 201 (4th Cir. 1989).

The instructions plainly allowed the jury to understand the supervisory requirement. The "usual and ordinary" meaning of manager or supervisor does not include a mere buyer-seller relationship. Buyer-seller relationships are not characterized by "the exer-

---

**1.** The Third Circuit requires unanimity as to acts constituting the continuing series but not as to the identities of the five individuals participating in the CCE. *See United States v. Edmonds*, 80 F.3d 810, 812 (3d Cir.1996) (in banc); *United States v. Jackson*, 879 F.2d 85, 87–88 (3d Cir. 1989). Respectfully, we fail to understand this contradiction. *See* II.B. *infra.*

cise of power or authority." Jurors are competent to understand and apply ordinary concepts like organizer, supervisor and management. An appellate court only burdens the conduct of a trial when it requires the elaboration of statutory elements which are already self-explanatory. In sum, we decline to make the CCE statute one of inoperative complexity, and we reject appellant's challenges to the jury instructions.[2]

## III.

■ Hall raises several other assignments of error. The first regards the government's notes from interviews of witnesses. Hall asserts that the judge should have performed an *in camera* review of the government's notes from the Stokes and Hamlin interviews. According to Hall, the notes might have fit the definition of "statement" under the Jencks Act, 18 U.S.C. § 3500 *et seq.*, in which case the government would have been required to turn the notes over to Hall after the two witnesses testified.

Hall misreads the Jencks Act. It requires that such notes be produced only if they are "a substantially verbatim" record of the witness's statement or if they are adopted and approved by the witness. 18 U.S.C. § 3500(e)(1), (2). Here there was no evidence to lead the judge to believe the notes in question were of that variety. The agents who took the notes never asserted that they were verbatim statements of the witnesses, nor were the notes ever adopted or approved by the witnesses. In fact, both witnesses testified that they had never seen the documents. Given the lack of evidence suggesting that the notes should be produced, we find no abuse of discretion in the district judge's failure to conduct an *in camera* inspection of the writings or in his refusal to present them to Hall.

## IV.

■ Hall also contends that, for two reasons, he should have been allowed to sever his trial from that of his two co-defendants.

First, he claims that his offenses did not relate to the same scheme or transaction as those of the other defendants because they were part of a separate organization with which he had only a buyer-seller relationship.

Defendants who are indicted together are generally tried together. *United States v. Brooks*, 957 F.2d 1138, 1145 (4th Cir.), *cert. denied*, 505 U.S. 1228, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992). Hall and his two co-defendants were indicted as part of the same criminal conspiracy—an extensive organization spanning several states and involving more than a dozen people. While Hall denies knowing one of his co-defendants, Derrick Kelley, the evidence at trial showed that Kelley and another individual conspired with Hall's brother to distribute cocaine. Moreover, Hall never raised below the argument that there existed multiple conspiracies and his co-defendants were part of a separate conspiracy. We give such an assertion little credence at this point.

Hall's second argument for severance is that he was prejudiced by being tried together with his co-conspirators. Hall observes that his co-defendant Kelley was charged with murder. According to Hall, the evidence brought in against his co-defendant Kelley on the murder charge may have "inflame[d] the passions" of the jury. The jury, Hall asserts, likely found it "difficult to compartmentalize" such evidence and apply it to the proper defendant.

We find Hall's argument unpersuasive. Hall himself was a drug kingpin, while his co-defendants were underlings. If anything, evidence introduced to convict Hall would have been prejudicial to his co-defendants, not vice-versa. Moreover, co-defendant Kelley was acquitted of the murder charge which Hall claims so inflamed the jury. Most importantly, the jury was carefully instructed to give separate consideration to the charges and evidence offered against each individual defendant:

---

2. Appellant did not object to these jury instructions at trial. Because we find no error in the instructions, we have no occasion to inquire whether plain error exists. *See United States v.*

*Olano*, 507 U.S. 725, 731–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993); *United States v. Rogers*, 18 F.3d 265, 268 (4th Cir.1994).

It is your duty to give separate and personal consideration to the case to each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual defendant, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants.

Trial courts enjoy broad discretion in ruling on motions for severance. There was certainly no abuse of discretion here.

## V.

 Finally, Hall contends that he should not have been sentenced for distributing 255 kilograms of cocaine, because the quantity was unsupported by evidence, and he should not have been sentenced for distributing cocaine base, because he sent cocaine powder to Virginia. We review the district court's finding of the amount and nature of drugs attributed to Hall for clear error. *United States v. Mark,* 943 F.2d 444, 450 (4th Cir.1991).

With regard to Hall's first argument, the amount of drugs attributed to him was well supported by the evidence. Three couriers testified to having made a total of at least eighty-five round trips between New York and Virginia to deliver drugs for Hall. When stopped on one such run, one courier was carrying three kilograms of cocaine. Another of the couriers estimated that he carried approximately three kilograms on each of his trips, and yet another discussed one run on which he carried 13 kilograms. One of Hall's co-conspirators said that he cooked three to four kilograms of powder twice a day, two or three days a week, for local distribution by Hall. Still another said he personally distributed between 100 and 200 kilograms of cocaine base for the organization. In short, the government easily proved that Hall oversaw the distribution of at least 255 kilograms of cocaine.

Hall's contention that he should only have been held responsible for distributing cocaine powder, not base, also fails. First, the evidence at trial showed that Hall distributed some cocaine base himself. For example, one co-conspirator regularly cooked large quantities of cocaine powder into base for Hall for distribution in New York City. Second, Hall was aware that the cocaine powder he shipped to his brother in Virginia was being cooked into base before distribution. Hall had visited Virginia, talked to co-conspirators, and observed the cocaine base being distributed there. It was thus clearly foreseeable to Hall that the conspiracy which he led was distributing large quantities of cocaine base, not merely cocaine powder. *See United States v. Gilliam,* 987 F.2d 1009, 1013 (4th Cir.1993).

## VI.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*