United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 23, 1997 Decided September 12, 1997 

 No. 95-3157

 United States of America, 

 Appellee

 v.

 Mark Dennard Hoyle, a/k/a Slim, 

 a/k/a Markie, 

 Appellant

 Consolidated with

 95-3158, 95-3159 & 95-3160

 Appeals from the United States District Court 

 for the District of Columbia 

 (92cr0284-01, 92cr0284-02, 

 92cr0284-03 & 92cr0284-08)

---------


 Jensen E. Barber, Vincent A. Jankoski, William J. Garber, 
and John J. Carney, all appointed by the court, argued the 
causes and filed the joint briefs for appellants.

 Andrew C. Phelan, Assistant U.S. Attorney, argued the 
cause for appellee, with whom Eric H. Holder, Jr., U.S. 
Attorney at the time the brief was filed, John R. Fisher, 
Thomas C. Black, Gregg A. Maisel, Rachel Adelman-Pier-
son, and Lynn C. Leibovitz, Assistant U.S. Attorneys, were 
on the brief. Elizabeth Trosman, Assistant U.S. Attorney, 
entered an appearance.

 Before: Silberman, Williams and Henderson, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Silberman.

 Concurring opinion filed by Circuit Judge Henderson.

 Silberman, Circuit Judge: Appellants were convicted of 
participating in a RICO conspiracy and engaging in a continu-
ing criminal enterprise (CCE). They contend that the impo-
sition of cumulative sentences for these two offenses violates 
the Fifth Amendment's prohibition against double jeopardy. 
We affirm appellants' convictions.

 I. 

 Appellants are members of the so-called Newton Street 
Crew. They were found guilty after a five-month trial of a 
variety of offenses, including unlawful use of firearms, rob-
bery, and murder relating to a conspiracy to distribute crack 
cocaine in the District of Columbia and Maryland. All four 
were shown to have been heavily involved in the organiza-
tion's distribution of crack cocaine and use of violence, both to 
enforce organizational discipline and to eliminate competitors. 
Three of the four, Goldston, Hoyle, and McCollough, were 
further shown to have been leaders in the organization. They 
were each given multiple life sentences and assorted other 
prison terms. Although appellants raise numerous conten-
tions on appeal, we think only one of these merits discussion.1 

__________
 1 We reject with one exception all of appellants' other chal-
lenges. Hoyle, McCullough, and Goldston argue that the separate 


Hoyle, McCollough, and Goldston contend that it was an error 
of law for the district court to impose separate life sentences 
for violation of 18 U.S.C. s 1962(d) (1994) (RICO conspiracy) 
and 21 U.S.C. s 848 (1994) (CCE).2 They argue that RICO 
conspiracy is a lesser included offense of CCE, and, thus, the 
imposition of cumulative sentences for these two crimes vio-
lates the Fifth Amendment's prohibition against double jeop-
ardy.

 II.

 Although the Double Jeopardy Clause literally protects 
against successive prosecutions for the same offense, it has 
been interpreted as also precluding multiple punishments for 
the same offense. Albernaz v. United States, 450 U.S. 333 
(1981). Under certain circumstances nominally separate of-
fenses could be thought the same offense--thus implicating 
the clause. It is a matter of legislative intent. If the 
legislature intends that the two offenses be treated as the 
same offense, the Double Jeopardy Clause applies. If the 
legislature intends that the two offenses be distinct, it does 
not. When a defendant is charged with two offenses, the 
"Double Jeopardy Clause does no more than prevent the 
sentencing court from prescribing greater punishment than 
the legislature intended." Missouri v. Hunter, 459 U.S. 359, 
366 (1983).

 In determining legislative, in this case congressional, in-
tent, Blockburger v. United States, 284 U.S. 299 (1932), 
directs that we break down the elements of the two crimes 

__________
sentences imposed for their 21 U.S.C. s 846 (1994) (conspiracy to 
distribute cocaine) and 21 U.S.C. s 848 (1994) (CCE) convictions 
are cumulative and violate the Fifth Amendment's Double Jeopardy 
Clause. The government concedes appellants' argument in light of 
the Supreme Court's recent holding in Rutledge v. United States, 
116 S. Ct. 1241 (1996). Accordingly, we vacate Hoyle's, McCul-
lough's, and Goldston's s 846 drug conspiracy convictions along 
with the attendant $50 special assessments.

 2 This challenge does not apply to appellant Harris because he 
was not charged with a CCE offense.


and determine "whether each provision requires proof of an 
additional fact which the other does not." Id. at 304. If 
crime "A" has all the elements of crime "B"--even though 
"A" has additional ones that "B" does not--then "B" would be 
a lesser included offense within "A" and a defendant could not 
be charged with violation of "B" as well as "A" unless the 
legislature clearly indicated otherwise. United States v. Bak-
er, 63 F.3d 1478, 1494 (9th Cir. 1995), cert. denied, 116 S. Ct. 
824 (1996).

 Applying the Blockburger rule to determine whether RICO 
conspiracy is a lesser included offense incorporated within 
CCE, we observe that in order to make out a CCE violation 
the government must show that the defendant committed: 
"1) a felony violation of the federal narcotics law; 2) as part 
of a continuing series of violations; 3) in concert with five or 
more persons; 4) for whom the defendant is an organizer or 
supervisor; 5) from which he derives substantial income or 
resources." United States v. Grayson, 795 F.2d 278, 283-84 
(3d Cir. 1986). A "continuing series of violations" is defined 
as "at least three related felony narcotics violations, including 
the one charged." United States v. Hall, 93 F.3d 126, 129 
(4th Cir. 1996), cert. denied, 117 S. Ct. 1087 (1997).

 A RICO conspiracy charge, on the other hand, requires 
proof that the defendant agreed to further a substantive 
RICO violation. That obliges the government to show "(1) 
the existence of an enterprise which affects interstate or 
foreign commerce; (2) that the defendant 'associated with' 
the enterprise; (3) that the defendant participated in the 
conduct of the enterprise's affairs; and, (4) that the partic-
ipation was through a pattern of racketeering activity, i.e., by 
committing at least two acts of racketeering activity as de-
fined by 18 U.S.C. s 1961(1)." United States v. Phillips, 664 
F.2d 971, 1011 (5th Cir. 1981).3

__________
 3 The Supreme Court has held that "[i]n order to 'participate, 
directly or indirectly, in the conduct of [a RICO] enterprise's 
affairs,' one must have some part in directing those affairs." Reves 
v. Ernst & Young, 507 U.S. 170, 179 (1993). We have yet to decide 
whether the Reves "operation or management" test also applies to 


 CCE's requirement that the defendant have organized or 
supervised five or more persons is not matched by any of the 
RICO conspiracy elements, but the question before us is not 
whether the offenses are identical--only whether if a CCE 
violation is shown, a RICO conspiracy is also necessarily 
made out. The government contends that the one element of 
RICO not subsumed within CCE is the requirement of a 
showing of a criminal enterprise. Such an enterprise is 
proved both by evidence of an ongoing organization and by 
evidence that the "associates are bound together ... so that 
they function as a continuing unit." United States v. Per-
holtz, 842 F.2d 343, 362 (D.C. Cir. 1988); see United States v. 
Turkette, 452 U.S. 576, 583 (1981). Appellants assert that 
such an organization and constancy of personnel are necessar-
ily implied by CCE's requirement that the government prove 
a continuing series of violations, in concert with five or more 
persons, for whom the defendant is an organizer or supervi-
sor.

 Seven of our sister circuits have accepted the government's 
position, that a CCE violation does not require proof of the 
existence of a RICO enterprise. United States v. Bennett, 44 
F.3d 1364, 1375 (8th Cir.), cert. denied, 115 S. Ct. 2279 (1995); 
United States v. Muhammad, 824 F.2d 214, 218 (2d Cir. 
1987); Grayson, 795 F.2d at 286; United States v. Ryland, 
806 F.2d 941, 943 (9th Cir. 1986); United States v. Love, 767 
F.2d 1052, 1061 n.13 (4th Cir. 1985); United States v. Sinito, 
723 F.2d 1250, 1262 (6th Cir. 1983); Phillips, 664 F.2d at 
1014.

 Although appellants are facing overwhelmingly negative 
case law on this exact issue, the Seventh Circuit--breaking 
with other circuits on the related question of whether a CCE 
violation is made out if the defendant supervised five subor-
dinates on successive occasions even if no two were operating 

__________
RICO conspiracy, see United States v. Thomas, 114 F.3d 228, 242 
(D.C. Cir. 1997), but the resolution of that question is not relevant 
to the disposition of this case. Even if we were to apply the 
"operation or management test" to a RICO conspiracy charge, the 
CCE statute contains an analogous requirement in its supervision 
prong.


under the defendant's direction at the same time4--has rea-
soned in a fashion that lends support to appellants' claim. In 
United States v. Bond, 847 F.2d 1233, 1237 (7th Cir. 1988), 
the Seventh Circuit said that the CCE statute, designed to 
reach the so-called kingpins of the drug trade, United States 
v. Johnson, 575 F.2d 1347, 1358 (5th Cir. 1978), was "aim[ed] 
at criminal organizations." Therefore, although it would not 
be necessary to show that the defendant supervised the same 
five persons through a continuous series of crimes, it would 
not suffice if "[a] small timer had one servant in January, a 
second in February, a third in March and so on." Bond, 847 
F.2d at 1237. Judge Posner, dissenting in United States v. 
Bafia, 949 F.2d 1465 (7th Cir. 1991), setting forth his under-
standing of the logic of Bond, thought that although simulta-
neous supervision of the same five subordinates was not 
required, the organization must have at least five "slots"--
which does imply a continuous framework. Id. at 1481.5 To 
be sure, the Seventh Circuit has not even suggested that such 
a concept is equivalent to a RICO enterprise, but that propo-
sition might be thought a logical extension.

 We think that the Seventh Circuit has a powerful position 
in contending that CCE does not cover the periodic employ-
ment by a drug dealer of a single rotating runner. Even if 
that is so, however, we do not believe that the government 
must show, under CCE, the structure of a continuing organi-
zation equivalent to a RICO "enterprise." The statute does 
refer to the defendant as an organizer or supervisor but one 
can organize events and supervise transitory subordinates 
without creating an organizational structure. And although 
the phrase "continuing series" certainly connotes related 
events, see Hall, 93 F.3d at 129, those events can be related 

__________
 4 Compare Phillips, 664 F.2d at 1010 (holding that the govern-
ment need only prove that the defendant supervised at least five 
other persons and "such relationships need not have existed at the 
same moment of time ....") and Muhammad, 824 F.2d at 218, with 
United States v. Bond, 847 F.2d 1233, 1237 (7th Cir. 1988).

 5 The majority opinion does not really deal with Judge Posner's 
analysis.


by virtue of a defendant's specific modus operandi, even in 
the absence of the use of common subordinates.6 Take as an 
example a drug dealer who, perhaps for security reasons, 
recruits a different group of distributors, picked rather at 
random in areas where such persons might be found. If he 
should do so on three separate days in a single month, on 
each occasion recruiting and temporarily organizing more 
than five runners with no overlap of personnel, this could be 
thought a "continuing series" of violations in concert with five 
or more persons for whom the defendant is the organizer or 
supervisor. But no actual organization or structure is 
formed; it is only inchoate.7 In order to form an actual 
organization equating to RICO's "enterprise," there would 
have to be a certain core of constant personnel. Therefore, 
even if it is possible to describe a shadow structure complete 
with slots only in the defendant's mind as a CCE "organiza-
tion," that seems too tenuous a concept to apply to RICO, 
which--it will be recalled--requires "associates bound togeth-
er ... [in] ... a continuing unit."

 The difference in the required evidence is explicable in 
light of the somewhat different objectives of the two statutes; 
CCE is aimed at the organizer more than the organization, 
whereas RICO is directed at the organization. See Phillips, 
664 F.2d at 1013 n.62 ("[CCE] focuses on the organizers of 
narcotics operations while RICO focuses on all direct and 
indirect participants in the organized criminal enterprise.").

 * * * *

 Therefore, we reject appellants' argument that their CCE 
and RICO convictions may not coexist.

__________
 6 If we did interpret the statute as requiring common subor-
dinates, we then would be faced with the question of how much 
overlap was necessary.

 7 Judge Posner spoke of a "table of organization that, however 
informal, has at least five spaces on it." Bafia, 949 F.2d at 1481. 
That logic could suggest that even an organizational structure in the 
defendant's mind would suffice for CCE purposes, but that still 
would not necessarily amount to an enterprise under RICO.



Karen LeCraft Henderson, Circuit Judge, concurring:

 While I fully concur in the result, I believe it is not 
necessary, and unwise, to opine on the simultaneity issue. As 
the opinion acknowledges, even if a CCE required simulta-
neous management of at least five subordinates, a RICO 
conspiracy charge would nonetheless not constitute a lesser 
included offense of the CCE charge. Majority Op. at 6-7.