PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4101

NATHANIEL A. RICHARDSON, JR., a/k/a
Nathaniel Skeeter, a/k/a Skeet,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4149

JERMAINE CLEAVON GOLDEN,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-96-153)

Argued: May 5, 2000

Decided: November 22, 2000

Before WIDENER and MOTZ, Circuit Judges, and
Irene M. KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Motz and Judge Keeley joined.

_____

**COUNSEL**

**ARGUED:** Keith Loren Kimball, COLGAN & KIMBALL, P.L.C., Virginia Beach, Virginia, for Appellants. Vincent L. Gambale, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Douglas Fredericks, Norfolk, Virginia, for Appellants. Helen F. Fahey, United States Attorney, Laura Pellatiro Tayman, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

In a prior unpublished decision, we affirmed the various convictions for drug related crimes of Nathaniel A. Richardson, Jr., Jermaine Cleavon Golden, and Avery Myron Lawton.[1] United States v. Nathaniel A. Richardson, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096 (4th Cir. 1998) (Nathaniel Richardson). Nathaniel Richardson and Golden filed a petition for certiorari in the Supreme Court, which granted certiorari, vacated our just mentioned prior decision in Nathaniel A. Richardson, Jr. v. United States, 526 U.S. 1155 (1999), and remanded the case for reconsideration in light of the Court's decision in an unrelated case, Eddie Richardson v. United States,[2] 526 U.S. 813 (1999) (Eddie Richardson). Upon reconsideration, we affirm both Golden's and Nathaniel Richardson's respective convictions and sentences.

I.

We consider here the Continuing Criminal Enterprise conviction of

_____

[1] Lawton is not a party to the present appeal.
[2] The case in 526 U.S. at 813 involved a defendant named Eddie Richardson. The current appeal involves a different man, Nathaniel A. Richardson, Jr. To avoid confusion in this opinion, we will refer to Nathaniel Richardson's case in our court as Nathaniel Richardson and to the Supreme Court's opinion in Eddie Richardson's case as Eddie Richardson. As well, we may use their given names.

2

Nathaniel A. Richardson, Jr., pursuant to the remand from the Supreme Court, and as well we consider the argued application of <u>Jones v. United States</u>, 526 U.S. 227 (1999), and <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (June 26, 2000), to the conspiracy conviction of Richardson and to Richardson's substantive conviction on Count THREE. We also consider any application of <u>Apprendi</u> to the sentencing of these defendants. Other than that, we adhere to our decision in <u>United States v. Nathaniel A. Richardson, Jr.</u>, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096 (4th Cir. 1998) (<u>Nathaniel Richardson</u>).**3**

II.

The facts concerning the underlying drug conspiracy leading to the arrests and trial in this case were set forth in our prior opinion, and we restate them here.

> Evidence at trial (taken in the light most favorable to the Government) established that at the relevant times charged in the indictment, Richardson organized and operated a continuing drug trafficking operation in the Southside Gardens area of Portsmouth, Virginia. Beginning in 1992, Richardson and Joseph Dodd began purchasing crack cocaine in relatively large quantities which they then sold to lower-level dealers, including [ ] Avery Lawton. Over the next two years, Richardson purchased ever increasing quantities of crack cocaine such that early in 1994 Richardson regularly purchased kilogram quantities of crack cocaine from a supplier named Michael Cromwell.
>
> By 1995, Richardson's illicit business relationship with Cromwell was thriving to the point that Cromwell sent couriers to Suriname, South America to bring kilogram quantities of liquid and powder cocaine to the United States on Richardson's behalf. Cromwell then processed the cocaine,

---

**3** In the event our earlier opinion in 97-4101(L), 162 F.3d 1158 (table), did not implicitly find sufficient evidence to sustain Richardson's conviction on Count THREE of the indictment, we add that we find an abundance of evidence to sustain that conviction.

3

sometimes with the help of Richardson, and Richardson then sold quantities to several underlings, including Golden and Lawton.

. . . In May 1995, Portsmouth police officers, exercising a valid search warrant at Joseph Dodd's residence, recovered 642.5 grams of crack cocaine. Richardson was present in the bedroom where the cocaine was found and evidence at trial established that this cocaine had originally been part of a larger three kilogram shipment that Richardson stored at the residence of one Fred Hamm. See JA 344-45.

Following his arrest on drug distribution charges in connection with the May search and seizure, Richardson expanded his enterprise into heroin distribution. During the fall of 1995 Richardson provided Hamm with heroin, instructed Hamm on where to buy cutting agents, and taught him how to dilute and package the product for street distribution. Lawton was also brought into this expansion of the drug trade and he began selling the product in the Southside area. See JA 948-50; 972-75; 10001-02; 1077-79.

Finally, in July 1996, seven defendants (including appellants here) were charged by a federal grand jury in a sixteen-count indictment alleging a criminal conspiracy to distribute crack cocaine and heroin. Richardson, Lawton, and Golden, each plead not guilty and were tried together. Following a jury trial, appellants were found guilty of various charges. Richardson was convicted of conspiracy [under 21 U.S.C. § 846], engaging in a criminal enterprise[in violation of 21 U.S.C. § 848], possession with intent to distribute crack cocaine [under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2], and [two counts of] money laundering [under 18 U.S.C. § 1956(a)]. Golden was convicted of conspiracy [under 21 U.S.C. § 846], possession with intent to distribute crack cocaine [under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2], and carrying a firearm in relation to a drug trafficking offense [under 18 U.S.C. §§ 924(c) and 2]. . . .

Nathaniel Richardson, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096, at **1-2. The district court sentenced Nathaniel Richard-

4

son to life imprisonment for both the continuing criminal enterprise count and the substantive drug count and to 240 months imprisonment for each of his two money laundering counts. The district court vacated Richardson's conspiracy conviction treating it as a lesser-included offense of the continuing criminal enterprise conviction. The district court sentenced Golden to 235 months imprisonment for the conspiracy and possession counts, to be served concurrently, followed by an additional 60 months imprisonment for the firearm count.

Richardson and Golden timely appealed their convictions to this court. In that appeal, Richardson raised for the first time the argument that the district court erred by failing to instruct the jury <u>sua sponte</u> that all the jurors had to agree unanimously on which three acts constituted the continuing series of violations necessary for a conviction on the continuing criminal enterprise count.**4** <u>Nathaniel Richardson</u>, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096, at **5 n.2. We rejected that argument based on our decision in <u>United States v. Hall</u>, 93 F.3d 126 (4th Cir. 1996), which held that district courts were not required to give such an instruction. <u>Nathaniel Richardson</u>, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096, at **5 n.2 (citing <u>United States v. Hall</u>, 93 F.3d at 129-30). We also rejected Richardson's and Golden's remaining claims and affirmed their convictions. <u>Nathaniel Richardson</u>, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096, at **3-8.

Nathaniel Richardson and Golden then appealed our decision in <u>Nathaniel Richardson</u> to the Supreme Court. In his petition for certio-

_____

**4** Richardson also alleged that (1) the district court erred in failing to sustain his arguments that the government violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), when exercising its peremptory strikes, (2) the district erred by refusing to exclude the testimony of Carnell Byrd as irrelevant and prejudicial, (3) the evidence was insufficient to establish that he was involved in a conspiracy under 21 U.S.C. § 848(a) and (c), (4) he was entitled to an instruction stating that a mere buyer/seller relationship is not sufficient to prove a violation of the continuing criminal enterprise charge, and (5) the court improperly attributed two sentence enhancements based on his use of a firearm and his fleeing from law enforcement officials. See generally, <u>Nathaniel Richardson</u>, No. 97-4101(L), 1998 WL 546096.

5

rari, Nathaniel Richardson again argued that the jury should have been instructed to agree unanimously on the specific acts that constituted the series of violations for the continuing criminal enterprise count.[5] While Nathaniel Richardson's and Golden's petition was pending, the Supreme Court held in the unrelated case, Eddie Richardson, that under the continuing criminal enterprise statute, 21 U.S.C. § 848, the jury had "to agree unanimously about which specific violations make up the `continuing series of violations.'" Eddie Richardson, 526 U.S. at 815. This decision abrogated the holding of United States v. Hall that such an instruction was not required. See United States v. Brown, 202 F.3d 691, 699 (4th Cir. 2000) (acknowledging Hall's abrogation). Pursuant to its holding in Eddie Richardson, the Court vacated our decision in Nathaniel Richardson and remanded for reconsideration in light of its holding in Eddie Richardson. Nathaniel A. Richardson, Jr. v. United States, 526 U.S. 1155 (1999). Richardson now argues that the district court committed reversible plain error by failing to give a unanimity instruction and that we should exercise our discretion to notice the error, reverse his conviction, and order a new trial. Richardson also reasserts all his prior arguments raised to this court in his first appeal.

Golden was not convicted of continuing criminal enterprise, thus the Supreme Court's decision in Eddie Richardson did not affect our decision regarding Golden in Nathaniel Richardson. In Nathaniel Richardson, Golden only pursued his claim that the district court erroneously failed to sustain his Batson challenge. Nathaniel Richardson, No. 97-4101(L), 162 F.3d 1158 (table), 1998 WL 546096, at **2-3. This was also the only claim Golden pursued on certiorari to the Supreme Court. Golden reasserts his Batson claim in this appeal.

_____

[5] Richardson also presented the following arguments to the Supreme Court: (1) the district court failed to grant his Batson motion, (2) the evidence was insufficient to establish his guilt on the continuing criminal enterprise count, (3) the evidence was insufficient to prove his guilt on the substantive drug charge, and (4) the court erred in adding a two-point enhancement to his sentence.

III.

To convict a defendant of continuing criminal enterprise under 21 U.S.C. § 848(c), the government must show that a defendant committed a felony violation of the federal drug laws and that "such violation [was] a part of a continuing series of violations of [the federal drug laws]." 21 U.S.C. § 848(c)(2); see Brown, 202 F.3d at 698. The district court instructed the jury that "the phrase `a continuing series of violations' means three or more violations of federal narcotics laws committed which are in some way related to another." However, the district court did not instruct the jury that it had to agree unanimously on which three acts constituted the continuing series. Eddie Richardson now requires such an instruction. Because Richardson did not, and indeed could not, object to the exclusion of such an instruction at the time of his trial, we evaluate his case to see if the failure to include the instruction constitutes plain error that warrants a new trial. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993).

Under the standard set forth by the Supreme Court in United States v. Olano, we may only reverse a conviction for plain error if the defendant establishes the following: (1) that an error occurred, (2) that it is plain, and (3) that the error affected his substantial rights. Olano, 507 U.S. at 732. "Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (alteration in original) (internal quotation marks and citations omitted).

Under Olano, Richardson must first show that there was an error. Richardson argues, the government concedes, and we agree that the failure to include a unanimity instruction on the continuing criminal enterprise count was an error in light of Eddie Richardson. This error, as argued by Richardson and conceded by the government, was also plain. An error is plain when the law was clear at the time of the trial, but the action is clearly contrary to the law at the time of the appeal. See United States v. Hastings, 134 F.3d, 235 at 239-40 (4th Cir. 1998) (citing Johnson v. United States, 520 U.S. 461, 467-68 (1997); United States v. David, 83 F.3d 638, 645 (4th Cir. 1996)). Under our prece-

7

dent in Hall, a unanimity instruction was not required during Richardson's trial, but Eddie Richardson changed the law for this appeal, thus the error is plain.

While Richardson has established the first two prongs of the Olano analysis, he must also show that the error affected his substantial rights and, if so, that we should use our discretion to correct the error. We address these two points in turn.

A.

To determine if an error affected Richardson's substantial rights, we must find that it was prejudicial, or more specifically, that it "affected the outcome of the district court proceedings." See Olano, 507 U.S. at 734. Unlike a harmless error analysis, Richardson bears the burden of showing that the error was prejudicial. Olano, 507 U.S. at 734. As we explained succinctly in United States v. Hastings:

> On harmless error review, a defendant is entitled to reversal of his conviction unless the Government can establish that the error does not affect substantial rights. In contrast, on plain-error review, a defendant is entitled to reversal only upon a showing that the error does affec[t] substantial rights, that is, that the error actually affected the outcome of the proceedings.

134 F.3d 235, 240 (4th Cir. 1998) (alteration and emphasis in original) (internal quotations and citations omitted) (citing Olano, 507 U.S. at 734).

In his brief, Richardson argues that an Eddie Richardson error cannot be harmless. Under circuit precedent, we presume prejudice when an error cannot be reviewed for harmlessness. See Hastings, 134 F.3d at 240 (noting that in this circuit, an error that cannot be reviewed for harmlessness automatically satisfies the prejudice prong of the plain error inquiry). Thus, Nathaniel Richardson argues that he need not show prejudice from the error because the failure to instruct on an element of a crime can never be harmless. See, e.g., United States v. David, 83 F.3d 638, 647 (4th Cir. 1996). Richardson's briefs, there-

8

fore, provide no specific demonstration of prejudice due to the lack of a unanimity instruction on the continuing criminal enterprise count.

Richardson filed his brief before our decision in United States v. Brown. In Brown, we determined that Eddie Richardson errors which have been preceded by objection at trial are subject to harmless error analysis, Brown, 202 F.3d at 699. Richardson's brief, of course, did not take Brown into account. But, at oral argument, Richardson argued and now argues with some logic that because he contested the veracity of all the government's witnesses at trial, the jury could have disbelieved any or all of the witnesses. Therefore, the argument goes, we do not know which violations the jury unanimously agreed upon.[6] However, on plain error review, it is the defendant's burden to show that the error affected the outcome of the proceedings. Olano, 507 U.S. at 734. The fact that Richardson established that many of the witnesses had a motive to lie or exaggerate does not show that the jurors disbelieved the witnesses and that the jurors in turn would not have convicted him on the continuing criminal enterprise count under proper jury instructions. Even under a harmless, rather than plain, error review, we are of opinion that the government has shown that the error does not affect substantial rights. In addition to the conviction on Count THREE, the hundreds of felony drug transactions in which Richardson was shown to have participated leaves no doubt that two of them were valid. See note 6, infra.

Upon a review of the record, we have found affirmative evidence of hundreds of substantive felony violations of the federal drug laws in which Richardson either possessed, sold, bought, or prepared crack cocaine or other illegal drugs.[7] While the witnesses' credibility may

_____

[6] This is apparently Richardson's only available argument because of lack of affirmative evidence which tends to discount the evidence offered by the government. He called no witnesses in the case which went to the jury on the evidence of the government. The docket sheet shows: "Deft. Richardson presented no evidence and rested."

[7] Examples contained in the record include the following: Weekly sales of two ounces of crack cocaine to Bob Holman, perhaps a dozen transactions -- throughout summer of 1992. J.A. 445. Repeated sales of quarter ounce and half ounce packages of crack to Mr. Byrd-- summer 1992. J.A. 821. Sale of crack to Mr. Jett -- summer of 1992. J.A. 967. Multiple

9

have been questioned due to their various motives for testifying and their activities as drug dealers, on this record the incidents themselves were not subject to question unless the jury did not believe the witnesses. As noted, Richardson essentially argues that the record does not show which three violations the jury agreed upon when there were multiple violations to choose from. Because of the sheer number of

_____

purchases of four and one-half ounces of crack from"Chef" -- spring of 1993. J.A. 447. Repeated purchases of ten ounces of crack from "Black" -- April and May of 1993. J.A. 450. "Fronting" for sale to Miss Crawford a quarter ounce, then a half ounce, and then another half ounce all on the same day -- spring 1994. J.A. 525. Two sales of one ounce packages of crack to Miss Crawford -- spring 1994. J.A. 525. Sales of four and one-half ounces of crack to Miss Crawford two to three times a week, perhaps some forty transactions -- summer to winter of 1994. J.A. 536. Sale of a twenty dollar "piece" of crack to Miss Faison -- 1994. J.A. 946. Two sales of an ounce of crack to "Marcus" -- 1994. J.A. 947. Three deliveries of one-half ounces of crack packaged for sale to Mr. Barnes in a single night -- November 8, 1994. J.A. 1070. Delivery of another one half-ounce of crack to Mr. Barnes the next night -- November 9, 1994. Sale of four and one-half ounces of crack to Mr. Hamm roughly every three days for most of a year, perhaps over one hundred separate transactions -- 1994. J.A. 313. Multiple deliveries of crack cocaine to Mr. Golden, Mr. Lawton, and Miss Crawford-- 1994. J.A. 315. Possession of 160 quarter ounces of crack packaged for sale -- spring of 1995. J.A. 847. Delivery of heroin to Mr. Lawton -- spring of 1995. J.A. 951. Possession of three kilograms of crack -- April of 1995. J.A. 344. Sale of crack to Mr. Sweat -- 1995. J.A. 848. Separate, weekly deliveries of one-half to one kilogram of crack to Mr. Golden, to Mr. Dodd, and to Mr. Hamm, perhaps more than sixty transactions -- late 1994 to early 1995. J.A. 318. Daily sales of ten dollar bags of heroin to Miss Faison, more than two hundred separate transactions -- June of 1995 through January of 1996. J.A. 948. Purchase of two kilograms of crack from Mr. Cromwell -- summer of 1995. J.A. 1117. Purchase of an additional kilogram of crack from Mr. Cromwell -- summer of 1995. J.A. 1122. Financing trip of Miss Wright to ferry two kilograms of cocaine back from Surinam -- summer of 1995. J.A. 1123. Delivery of forty to fifty ten dollar bags of heroin to Miss Madsen -- fall of 1995. J.A. 975. Sale of six bags heroin to Mr. Barnes on five separate occasions -- November of 1995. J.A. 1079. Sale of twenty dollar piece of crack to Miss Elliot -- December of 1995. J.A. 760.

10

violations not contested by evidence, the fact that the jury was instructed that it must find three violations, and Richardson's inability to demonstrate that had the jury been properly instructed it would not have unanimously found the extra required violations,**8** to that found in Count THREE, under the circumstances, we hold that Richardson has not sustained his burden of showing that the Eddie Richardson error affected the outcome of the proceeding. The proof against Nathaniel Richardson was simply overwhelming.

B.

Even if there were prejudice, we should decline to correct the error unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U. S. 732 (internal quotations omitted). In view of the hundreds of felonious drug transactions, evidence of which the government produced, we conclude, and it is our opinion, that the fairness, integrity or public reputation of the judicial proceedings in this case are not seriously affected by the affirmance of the judgment of conviction and that the conviction should not be set aside merely because the jury was not instructed to isolate three violations among the hundreds before it.

IV.

Richardson now argues that Jones v. United States, and we note that the subsequent decision of Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), is on the same subject, should invalidate his convictions on Count ONE, conspiracy, and Count THREE, possession with intent to distribute 50 grams or more of cocaine.

With respect to the conviction on conspiracy, Count ONE, that conviction was vacated by the district court because the district court considered it as a lesser included offense under Count TWO, a Continuing Criminal Enterprise. The government did not appeal the vacation of the conspiracy offense, and the question is moot. Thus we do not address it. Richardson was not sentenced for conviction under Count ONE.

_____

**8** Even assuming the conspiracy conviction does not count.

11

With respect to the conviction under Count THREE, Richardson claims that neither the drug type or drug quantity were treated as elements of the offense. The argument is not well taken because there is no factual basis for the argument. Both the drug type and quantity were set forth in the indictment and the jury was charged in that respect.

Count THREE of the indictment provides in pertinent part as follows:

> Nathaniel A. Richardson, Jr., . . . did unlawfully, knowingly, and intentionally possess with the intent to distribute fifty (50) grams or more of a mixture or substance containing cocaine base . . . in violation of Title 21, United States Code Section 841(a)(1) . . . .

So the indictment explicitly charged Richardson with 50 grams or more of a substance containing cocaine base. Both the drug type and quantity Richardson complains about were explicitly charged in the indictment.

The district court ever so carefully charged the jury. Indeed it prepared a jury charge of 82 pages which it read to the jury and then gave to the jury in writing to take to the jury room. The charge was complete with an index of 63 items and included a letter for letter recitation of all of Count THREE, explicitly including the following language:

> Nathaniel A. Richardson, Jr., unlawfully, knowingly, and intentionally possessed with the intent to distribute fifty (50) grams or more of a mixture or substance containing cocaine base.

The jury was further charged that in order to convict the government must prove beyond a reasonable doubt that:

> . . . Nathaniel A. Richardson, Jr., possessed the controlled substance described in the indictment. (italics added)

12

Thus, the indictment explicitly charged the defendant with possession of 50 grams or more of the illegal drug crack cocaine. The jury was charged in the terms of the indictment and was charged that in order to convict the government must prove that the defendant "possessed the controlled substance described in the indictment."

The government could not have been more explicit as to the drug quantity and type in the indictment, and the district court could hardly have been more explicit in its jury charge. Thus, as noted, there is no factual basis for the claim that Jones was not complied with. In our opinion, there is no error at all with respect to the indictment and jury charge under Count THREE, harmless, plain or otherwise. Apprendi, 120 S.Ct. at 2362-2363, adopts the rule in Jones, so the result would be the same for an argument under Apprendi.

V.

Richardson and Golden also challenge several of their sentences under the recent case of Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).[9] Under Apprendi, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. 2362. In United States v. Angle, No. 96-4662, (4th Cir. Oct. 12, 2000), this circuit applied Apprendi to 21 U.S.C. § 841, the statute under which Richardson was convicted on Count THREE. As we decided in Angle,

> . . . in order for imprisonment penalties under § 841(b)(1)(A) or (B) to apply to the defendants, such that findings of particular drug quantities could expose them to imprisonment terms greater than § 841(b)(1)(C)'s catch-all statutory maximum of twenty years, the drug quantity must be treated as an element: charged in the indictment, submitted to a jury, and proven to beyond a reasonable doubt.

_____

[9] Richardson does not challenge under Apprendi the sentences imposed for conviction on Count FIFTEEN and Count SIXTEEN for money laundering, and Golden does not challenge the sentence imposed for conviction on Count Eight for unlawful carrying of a firearm.

13

<u>Angle</u>, slip op. at 15.

Richardson was sentenced to life imprisonment on Count Three, drug possession with intent to distribute 50 or more grams of crack cocaine. The statutory maximum provided for such drug possession is life imprisonment under § 841(b)(1)(A)(iii). Thus, because the amount of drugs was charged in the indictment and was required to be found by the jury his convictions complied with <u>Jones</u> and <u>Apprendi</u>. His sentence on Count THREE presents no <u>Apprendi</u> issue and is affirmed.**10**

For his conviction on Count TWO, engaging in a Continuing Criminal Enterprise, Richardson was sentenced to life imprisonment. The Continuing Criminal Enterprise statute, § 848, provides for a maximum term of life imprisonment. His sentence on Count TWO therefore presents no <u>Apprendi</u> issue and is affirmed.

Golden was sentenced to 235 months on Count FOUR, possession with intent to distribute 4.33 grams of crack cocaine. The statutory maximum provided for such drug possession under § 841(b)(1)(C) is 240 months. Thus, his sentence on Count FOUR presents no <u>Apprendi</u> issue and is affirmed.

Golden was also sentenced to 235 months on Count ONE, conspiracy. Sentences under the drug conspiracy statute, § 846, are those prescribed by the statutes fixing penalties for the substantive offenses that were the object of the conspiracy. The substantive offenses that were the object of the conspiracies in this case include possession with intent to distribute 50 or more grams of crack cocaine in violation of § 841(a)(1) and § 841(b)(1)(A)(iii) and distribution of heroin in violation of § 841(a)(1). Where, as here, a general verdict of guilt is returned on a count charging a conspiracy to distribute multiple kinds of narcotics, the sentence imposed may not exceed the statutory

_____

**10** Richardson was also sentenced to five years of supervised release on the drug possession count, to follow his term of imprisonment. We note that ". . . supervised release is not considered part of the incarceration portion of a sentence and therefore is not limited by the statutory maximum term of incarceration." <u>United States v. Pierce</u>, 75 F.3d 173, 178 (4th Cir. 1996).

maximum for the least-punished statutory object of the conspiracy on which the verdict could have been based. See <u>United States v. Quicksey</u>, 525 F.2d 337 (4th Cir. 1975). Here, the least-punished object on which the conspiracy conviction could have been based was distribution of heroin in violation of § 841(a)(1) and § 841(b)(1)(C). The maximum sentence a court may impose for distribution of heroin under § 841(b)(1)(C) is 240 months and, thus, the maximum sentence allowed on Golden's conspiracy count is 240 months.

Even if Golden was exposed to punishment beyond 240 months by the drug quantity found by the district court, U.S.S.G. Ch. 5, Part A., 235-293 months, his sentence was less than the 240 months maximum provided by the statute, so he has no complaint beyond resentencing, which is not required, his sentence already being within the statutory maximum. See <u>Angle</u>, Slip at p. 17. Golden, having not been injured by the operation of the <u>Apprendi</u> rule and the Sentencing Guidelines, his sentence accordingly is not contrary to <u>Apprendi</u> and we so hold. Cf. Rule 5, <u>Ashwander v. T.V.A.</u>, 297 U.S. 288, 347-348 (1936) (Justice Brandeis concurring).

The convictions and sentences of the defendants are accordingly

<u>AFFIRMED</u>.

15