**Wainsworth Marcellus HALL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civil No. 2:98cv215.
Criminal No. 2:93cr162.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 1, 1998.

884

Isaac Scott Pickus, Jackson, Pickus & Assoc., P.C., Richmond, VA, Anthony J. Vegh, Cleveland, OH, for petitioner.

*MEMORANDUM OPINION*
*AND ORDER*

JACKSON, District Judge.

This matter is before the Court on the motion to vacate, set aside or correct sen-

tence pursuant to 28 U.S.C. § 2255 filed by Petitioner Wainsworth Marcellus Hall. The petitioner argues that his sentence for money laundering and engaging in a continuing criminal enterprise ("CCE") should be vacated or corrected for the violation of his Fifth Amendment due process rights and Sixth Amendment effective assistance of counsel rights. Additionally, Petitioner filed motions for the release of his co-defendants' presentence investigation reports, leave to file discovery requests, production of documents and for an evidentiary hearing. Both the petitioner and the government have submitted memoranda on the relevant issues; thus, the matter is ripe for judicial determination. For the reasons set forth below, Petitioner Hall's motions for a writ of habeas corpus, to include the motion to supplement this § 2255 petition and motions for discovery and an evidentiary hearing are **DENIED.**[1]

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

Petitioner Hall was indicted by a Federal Grand Jury on December 8, 1993. He was charged with violations of the federal narcotics and money laundering laws. On June 14, 1994, a jury trial commenced which resulted in guilty verdicts against Hall for (1) conspiracy to possess with the intent to distribute and to distribute cocaine, cocaine base and marijuana, in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; and, (3) conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 371.

On September 15, 1995, Hall was sentenced to life imprisonment on the continuing criminal enterprise count and to a concurrent sentence of 240 months for money laundering. The Court vacated the conspiracy con-

viction pursuant to Fourth Circuit precedent.[3]

On September 20, 1994, Hall filed a Notice of Appeal. By trial counsel Eileen Olds, the petitioner filed an appellate brief on March 31, 1995. On August 19, 1996, the Court of Appeals affirmed the convictions and sentence. A subsequently filed petition for writ of certiorari was denied on February 24, 1997.

On February 20, 1998, Petitioner filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The Court ordered the government to respond to the original motion on March 4, 1998. The petitioner filed an amended motion on March 30, 1998. The government filed, on April 3, 1998, a motion for leave to file a late response. On April 7, 1998, the Court granted the government's motion, but directed that a response be filed on or before April 20, 1998. The government complied with the Court's order. On May 11, 1998, Hall filed a motion for extension of time to file a reply to the government's response. The Court granted Petitioner's request on June 5, 1998. On June 15, 1998, the petitioner filed a reply to the Government's response to the § 2255 motion.

Petitioner also filed several motions pertaining to discovery. On March 30, 1998, Hall filed a motion for the release of his co-defendants' presentence investigation reports. Hall filed, on May 11, 1998, a motion for leave to file discovery requests with the government. He also filed a motion for production of documents. On June 19, 1998, the Government filed its response to Petitioner's motion for discovery. Petitioner filed a motion for an evidentiary hearing on July 23, 1998.[4] Finally, on July 28, 1998, Petitioner untimely filed a reply to the government's

---

1. Petitioner's motion to supplement the instant § 2255 motion is addressed herein as an additional ground 'he asserts for relief under 28 U.S.C. § 2255.

2. A great deal of extraneous information has been asserted by the parties regarding the factual background to this action. The Court will endeavor to recount only the most basic of background information.

3. A defendant cannot be convicted of both a conspiracy count pursuant to 21 U.S.C. § 846 and conducting a continuing criminal enterprise pursuant to 21 U.S.C. § 848 because conspiracy is a lesser included offense of a continuing criminal enterprise. *See United States v. Chin,* 83 F.3d 83, 86 (4th Cir.1996).

4. The government failed to respond.

response to Petitioner's motion for discovery.[5]

On August 3, 1998, Petitioner filed a motion to supplement the § 2255 petition in light of the Tenth Circuit holding in *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998). On September 24, 1998, the Court ordered the United States to respond to Petitioner's motion to supplement. The government's response was filed on October 16, 1998. On November 9, 1998, Petitioner responded to the government's memorandum in opposition to the motion to supplement.

Petitioner made five claims in his § 2255 petition. The first set of allegations pertain to due process violations. Specifically, Hall alleges that the Assistant United States Attorneys ("AUSAs") failed to disclose exculpatory information in that: (1) Ingrid Penick testified at trial that Petitioner was the sole source of narcotics, while she initially gave the government the names of others involved; (2) Agent Kennedy testified that Shelly Hunter bought the gun for the Petitioner, but the Hunter interview notes state that the gun was bought for Hunter's cousin, Andre Wiggins; and (3) information in the possession of the AUSAs could have been utilized to impeach witness John Stokes. Additionally, Hall alleges that the AUSAs knowingly used the perjured testimony of Agent Kennedy and Brian Dykes and then tried to conceal such misconduct by denying Petitioner background information that would have enabled impeachment of the two witnesses. In sum, Hall argues that the government refused to disclose *Brady* and *Giglio* information in its possession.[6]

Petitioner's second allegation concerns his attorneys' failures at trial. Hall had two trial attorneys: appointed counsel Eileen Olds and retained counsel Trevor Headley. Petitioner alleges that the attorneys: (1) failed to seek severance; (2) did not object to leading questions; (3) allowed the government to characterize the gun found in a car in which Petitioner was a passenger as belonging to him and being under his control; (4) failed to request jury instructions on multiple conspiracies and on limiting consideration of offenses pertaining to the continuing criminal enterprise count to those under Title 21, as opposed to Title 18; and, (4) did not argue for the trial testimony of witness Anthony Washington to be stricken.

The third allegation bears on the attorneys' ineffective assistance at sentencing. Petitioner asserts that defense counsel rendered deficient performance by failing to move for a downward departure on either or both of two grounds: (1) Hall's alien status as a Jamaican national and (2) the over-representation of prior criminal convictions in the calculation of his sentence. Further, he argues that defense counsel failed to object to the two point enhancement for possession of a firearm.

As a fourth claim, Petitioner asserts that he received ineffective assistance during the appellate proceedings. Appellate counsel Eileen Olds became a Juvenile and Domestic Relations Judge in General District Court for Chesapeake, Virginia, so George A. DuBois represented Hall. The petitioner claims that his attorneys should have contested: (1) the trial court's decision not to remove a juror who was visibly upset by a photograph of a murder victim; (2) the amount of drugs attributable to him; and, (3) the two-level gun enhancement.

Finally, Hall seeks modification of his sentence pursuant to 18 U.S.C. § 3582(c)(2).[7]

---

5. On July 28, 1998, Petitioner filed a reply to the United States' answer. Although the filing was nine (9) days late and Petitioner has made no showing of cause for the untimeliness, the Court will allow the response. Petitioner compiled a lengthy response and has made a good faith effort to comply. Additionally, no showing has been made that the United States Attorney is unfairly prejudiced by the untimeliness in a manner that makes it necessary for the Court to strike the response.

6. In the original pleading, Petitioner argued that the discovery of like notes had led to the acquittal of co-defendant Kelly. The allegation was absent in the amended pleading and refuted by the government in its response to Petitioner's motion to vacate. Accordingly, the issue is not addressed in this opinion.

7. Petitioner does not identify his request as one for sentence modification pursuant to § 3582(c)(2). Nonetheless, the Court construes his substantive claim as such.

Petitioner argues that he is entitled to a lesser sentence due to the 1994 amendment to U.S.S.G. § 2D1.1(c), Amendment 505, which reduced the maximum base offense level from 42 to 38.

With respect to Petitioner's discovery requests, he seeks: (1) FBI 302 reports of coconspirators and government witnesses; (2) the arrest file of July 1992, DEA 6 field reports, investigative reports and agent debriefing notes pertaining to Ingrid Penick; (3) state police reports and DEA 6 field reports concerning Eric Marshall; (4) DEA 6 field reports relevant to Brian Dykes and Margaret Jones; and, (5) DEA 6 reports and any related documentation concerning Dirk Ladson.

Moreover, "because of several discrepancies in the facts and the government's conduct in withholding exculpatory evidence," Petitioner seeks an evidentiary hearing in order to: (1) elicit testimony from AUSA Fernando Groene concerning the withholding of the Stokes notes and the suppression of exculpatory FBI 302s and DEA 6s pertaining to other unrelated criminal cases; (2) compel Agent Kennedy to address his previous testimony that Brian Dykes had never been to New York and other matters; (3) have John Stokes name those present when he made statements bearing upon his drug use and explain the variance between his trial testimony and interview statements; (4) obtain Ingrid Penick's testimony as to deals received from the government in exchange for her trial testimony; (5) get Eric Marshall to testify concerning his interview statements and actual involvement in other ongoing conspiracies; (6) question Eileen Olds and Headley as to their trial representation since they did not submit declarations or affidavits; and, (7) enable Petitioner to testify about his interaction with the attorneys.

## II. LEGAL STANDARDS

■ On a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence, the Petitioner bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir.1967); *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir.1982); *Polizzi v. United States*, 926 F.2d 1311, 1321 (2nd Cir. 1991). A petitioner may attack the sentence imposed on the grounds that: (1) the "sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Here, Petitioner Hall brings his claims under the first and third grounds: that the sentence was imposed in violation of the Fifth and Sixth Amendments of the United States Constitution and in excess of the maximum authorized by law in view of Amendment 505.

■ The errors Petitioner asserts in his motion were not raised at his sentencing. Therefore, to obtain relief, the petitioner must meet the two part "cause and actual prejudice" test. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Under that test, "[t]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.; United States v. Maybeck*, 23 F.3d 888, 890 n. 1 (4th Cir.1994). This standard presents "a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166, 102 S.Ct. 1584.

It is well settled, however, that a claim of ineffective assistance of counsel constitutes "cause" for failure to raise an issue prior to § 2255 review. *U.S. v. Breckenridge*, 93 F.3d 132, 134 n. 1 (4th Cir.1996). In such cases, Supreme Court precedent authorizes collateral review where the error involves a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *United States v. Morrow*, 914 F.2d 608, 614 (4th Cir.1990).

## III. DISCUSSION

### A. Due Process Violations: Prosecutorial Misconduct & Use of Perjured Testimony

The petitioner argues that the prosecution knowingly withheld exculpatory documents prior to and during the trial and that the failure to turn over the materials constituted a violation of Petitioner Hall's right to due process of law under the Fifth Amendment of the United States Constitution.

As earlier stated, Hall alleges that the Assistant United States Attorneys failed to disclose documents showing that: (1) Penick had not indicated that Petitioner was the sole source of narcotics; (2) Kennedy's trial testimony was inconsistent with interview notes; and (3) information in the possession of the AUSAs could have been utilized to impeach witness Stokes. Additionally, Hall alleges that the AUSAs knowingly used the perjured testimony of Kennedy and Dykes and then tried to conceal such misconduct by denying Hall the background information that would have enabled him to impeach the two witnesses.

■ The first issue is whether Petitioner's allegations constitute a *Brady* violation which denied him 5th Amendment due process rights. Prosecutorial withholding of exculpatory evidence violates due process irrespective of whether the government did or did not act in good faith. *United States of America v. Sarihifard,* 155 F.3d 301, 309 (4th Cir.1998)(*citing Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). In order to prove a *Brady* violation, a defendant must show that the undisclosed materials were (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them. *Sarihifard,* 155 F.3d at 309 (citations omitted). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Courts deem evidence "favorable" not only when the materials would tend to exculpate the accused, but also when they can be utilized to impeach government witnesses.

*United States v. Ellis,* 121 F.3d 908, 914 (4th Cir.1997). Evidence is "material" if the failure to disclose it "undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Additionally, the Court has held that evidence is material when there is a reasonable probability that its disclosure would have produced a different outcome. *United States v. Kelly,* 35 F.3d 929, 936 (4th Cir.1994). In determining the likelihood of a different outcome, a reviewing court must evaluate the suppression or omission of evidence in light of the totality of circumstances. *Bagley,* 473 U.S. at 683, 105 S.Ct. 3375.

With respect to timeliness, no due process violation occurs as long as exculpatory *Brady* materials are disclosed in time for effective utilization at trial. *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 532 (4th Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985).

■ Here, Petitioner fails to establish that the Assistant United States Attorney's failure to disclose the materials constituted violations of constitutional due process rights under the *Brady* line of precedent. Hall argues that there is a discrepancy in Penick's testimony as to whether he was the sole supplier of narcotics. While the alleged a discrepancy is "favorable" to Hall because it would facilitate impeachment of witnesses, the suppression of the impeachment materials does not violate due process because the evidence is not material to Hall's guilt or punishment. There was voluminous testimony bearing on Petitioner's narcotics and gun related activities. The undisclosed documents also are not material because any inconsistencies with trial testimony would not undermine confidence in the trial outcome. Specifically, the Court of Appeals stated that "the government easily proved that Hall oversaw the distribution of at least 225 kilograms of cocaine." *United States v. Hall,* 93 F.3d 126, 131 (4th Cir.1996).

Further, Penick and Kennedy were merely two of a number of trial witnesses whose testimony satisfied the jury as to Petitioner's guilt. There is no reasonable probability that disclosure of interview notes, which were not verbatim and which the witnesses had

not adopted or approved, would have produced a different outcome given the totality of circumstances. Accordingly, the Court finds that the withheld documents do not constitute *Brady* materials and so the timing of the disclosure, or lack thereof, is irrelevant.

■ At best, such discrepancies, along with Petitioner's allegations pertaining to the Stokes notes, could be cast as *Giglio* materials helpful for impeachment. Impeachment affects the credibility of witnesses and the government has a duty to furnish defendant with material evidence affecting the credibility of government witnesses. *See Giglio v. United States,* 405 U.S. 150, 154–155, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

While Petitioner may argue that the inconsistencies in the documents affect witness credibility, *Giglio* evidence must be "material." The Court has already established that the withheld Penick and Hunter documents were not material.

■ Petitioner also argues due process violations based on the knowing use of perjured testimony by the government. A conviction acquired through the knowing use of perjured testimony by the government violates due process. *United States v. Kelly,* 35 F.3d 929, 933 (4th Cir.1994)(*citing Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). This is true whether the government solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected. *Id.* (*citing United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). The Court has consistently set aside convictions obtained by the knowing use of false testimony when there was "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. at 2399, 49 L.Ed.2d 342. Courts hold that even when false testimony bears only on the credibility of government witnesses and other evidence has called the witnesses' credibility into question, a conviction must be reversed when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs,* 427 U.S. at 103, 96 S.Ct. at

2397. The courts have predicated that conclusion on the fact that "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue,* 360 U.S. at 269, 79 S.Ct. at 1177. The knowing use of perjured testimony would force the government to demonstrate that the use of such testimony was "harmless beyond a reasonable doubt." *Bagley,* 473 U.S. at 679 n. 9, 105 S.Ct. 3375.

■ Conversely, "a defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured." *United States v. Griley,* 814 F.2d 967, 971 (4th Cir.1987). The Supreme Court established the standard for perjury which informs the required showing: "a witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 93–95 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony. *See Overton v. United States,* 450 F.2d 919, 920 (5th Cir.1971).

■ Here, the Stokes notes, which also would not be material, are solicited for impeachment purposes and at most would underscore "mere inconsistencies" not cognizable as components of a perjured testimony claim. In order to establish perjury, Hall bears the burden of establishing by a preponderance of the evidence that the testimony given was "false" and made with willful intent. Instead, he has established "mere inconsistencies." Given the volume of inculpatory evidence at trial, nothing suggests that Penick, Kennedy or Stokes gave false testimony which affected the judgment of the jury. Because the documents were not *Jencks, Brady* or *Giglio,* were not material and the Petitioner failed to establish that the government knowingly used perjured testi-

mony, the government's withholding of information is not fairly characterized as "concealment."

Petitioner additionally argues that the undisclosed documents are material because they would have affected the quantity of drugs for which he was held responsible. The Court of Appeals already addressed this issue finding that

> the amount of drugs attributed to [Hall] was well supported by the evidence. Three couriers testified to having made a total of at least eighty-five round trips between New York and Virginia to deliver drugs for Hall. When stopped on one such run, one courier was carrying three kilograms of cocaine. Another of the couriers estimated that he carried approximately three kilograms on each of his trips, and yet another discussed one run on which he carried 13 kilograms. One of Hall's co-conspirators said that he cooked three to four kilograms of powder twice a day, two or three days a week, for local distribution by Hall.

*Hall,* 93 F.3d at 131.

Therefore, this Court finds that the information is not material because disclosure would not have produced a different outcome.

The Court has evaluated the withholding of the documents in light of the totality of circumstances and finds no likelihood of a different outcome. Accordingly, the motion to vacate, set aside or correct sentence on grounds of violation of Fifth Amendment due process rights is **DENIED**.

## B. Ineffective Assistance of Counsel

Petitioner's claim of ineffective assistance by counsel is predicated on the following alleged failures by defense attorneys. At trial, Hall was represented by two attorneys: appointed counsel Eileen Olds and retained counsel Trevor Headley. Petitioner alleges that the attorneys did not seek severance, failed to object to leading questions, did not object to the government's characterization of the gun found in the trunk of a car in which he was a passenger, failed to request that the jury be instructed on multiple conspiracies and on the offenses to be considered for a finding of guilt on the continuing criminal enterprise count, and failed to argue to strike Anthony Washington's testimony.

His allegations also pertain to the attorneys' failures at sentencing. Petitioner asserts that they did not move for a downward departure based upon his alien status and over-representation of prior criminal convictions. Further, counsel failed to object to the two point enhancement for possession of a firearm.

Finally, Petitioner asserts that he received ineffective assistance during the appellate proceedings because his attorneys should have contested: (1) the trial court's decision not to remove a juror who was visibly shaken by a photograph of a murder victim; (2) the amount of drugs attributable to him; and, (3) the two-level gun enhancement.

The Supreme Court has established a standard for such claims. For an ineffective assistance of counsel claim, a litigant must prove both: (1) deficient performance and (2) prejudice. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, a litigant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. That is, a litigant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052.

To prove prejudice, the litigant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694, 104 S.Ct. 2052. Failure to meet either prong defeats a litigant's ineffective assistance of counsel claim. *Id.* at 700, 104 S.Ct. 2052. The court need not address both components of the test if the litigant makes an insufficient showing on one part of the test. *Id.* at 697, 104 S.Ct. 2052.

In ineffective assistance claims, a heavy measure of deference should be given to counsel's judgments. *Strickland,* 466 U.S.

at 690–691, 104 S.Ct. 2052 (1984). Nonetheless, counsel is ineffective when [s]he fails to present mitigating information at trial or sentencing. *Deutscher v. Angelone,* 16 F.3d 981, 984 (9th Cir.1994); *Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.); *cert. denied* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991). Counsel is also ineffective when [s]he fails to challenge the legality of an aggravating circumstance being used to enhance a sentence. *Starr v. Lockhart,* 23 F.3d 1280 (8th Cir.1994).

"[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance of counsel must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed.... The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." *Breckenridge,* 93 F.3d at 135–36.

Here, the issue is whether defense counsels' performance was deficient and prejudicial. The Court will address each of Petitioner's arguments in turn.

■■■ The Court finds that none of the six instances relating to trial representation fell below an objective standard of reasonableness. As to severance, the Court of Appeals has already found that: (1) the Court "carefully instructed" the jury to give separate consideration to the charges and evidence offered against each individual defendant; (2) trial courts enjoy broad discretion in ruling on motions for severance; and, (3) that "there was certainly no abuse of discretion here." *Hall,* 93 F.3d at 131.

■■■ Courts accord deference to defense counsel's judgments and the failure to object to questions characterized by Petitioner as leading does not constitute behavior falling below an objective standard of reasonableness.

■■■ Likewise, the Court finds the petitioner's argument pertaining to the characterization of the gun to be without merit. New York law enforcement agents provided

testimony that satisfies the legal requisites. The Court does not find that the attorneys' failure to object to the characterization of the guns was deficient performance.[8]

■■■ With respect to the instruction on multiple conspiracies, Petitioner focused on the wrong issue: the only thing that the government must prove is that there was an agreement between defendants to undertake illegal conduct relating to controlled substances and that each defendant willfully joined in that agreement. That other conspiracies may have existed would not erase Petitioner's membership in the one for which the jury held him accountable and which the government proved. While a trial judge should give an instruction on single versus multiple conspiracies upon request when there is an evidentiary basis to support it, *United States v. Dorta,* 783 F.2d 1179, 1183–84 (4th Cir.), cert. denied, 477 U.S. 905, 106 S.Ct. 3274, 91 L.Ed.2d 564 (1986), such an instruction is not required unless trial proof demonstrates "separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Kennedy,* 32 F.3d 876, 884 (4th Cir.1994). Upon review of the record, the Court does not find proof at trial of separate unrelated conspiracies. Accordingly, the instruction was not required and defense counsel was not performing deficiently to not request it.

■■■ Similarly, the Court finds Petitioner's arguments concerning the continuing criminal enterprise instructions to be without merit. The Court of Appeals affirmed that a "continuing series" consists of at least three related felony narcotics violations and further found that this Court gave "a more generous instruction than the statute requires." *Hall,* 93 F.3d at 129. The Court of Appeals construed the section and determined that the statute demands that jurors agree that there was a continuing series, not that they agree on the composition of the series. As the jurors knew that they were to consider felony narcotics violations and the Court of Appeals has already deemed the instruction on the continuing criminal enterprise standard satisfactory, the Court cannot find defense

---

8. Also see discussion on two-point enhancement for possession of a firearm.

counsel's failure to object an omission below the objective standard of reasonableness.

■ The final alleged deficiency concerns trial counsel's failure to have witness Washington's testimony stricken. Washington asserted his Fifth Amendment privilege on the collateral issue of acts of violence which he had committed. The Court is not required to strike the testimony of a government witness asserting the Fifth Amendment right against self-incrimination when questioned on collateral matters by defense counsel. *See United States v. DiGiovanni*, 544 F.2d 642 (2d Cir. 1976); *United States v. Diecidue*, 603 F.2d 535 (5th Cir.1979). The Court does not find that defense counsel rendered deficient performance by failing to argue to have the testimony stricken.

■ With respect to the three allegations concerning the sentencing phase of the trial, the Court finds them to be without merit. Hall contends that his attorneys should have sought a downward departure because, as an illegal alien, he is subject to more severe penalties than a similarly situated citizen defendant. He cites no authority in support of the proposition that, as a matter of right, he is entitled to a downward departure on this basis. To the contrary, alien status alone is an inappropriate basis for departure. *United States v. Restrepo*, 999 F.2d 640, 644 (2d Cir.1993)(finding that while alienage is not "ordinarily relevant" for sentencing purposes, it may be considered when the sentencing court finds that its effect is beyond the ordinary). Here, the Court has no basis for finding that the effect of Hall's alien status is beyond the extraordinary. The conviction for conducting a continuing criminal enterprise makes Hall ineligible for community confinement and the fact that he was sentenced to life in prison without possibility of parole renders his argument baseless. Petitioner cannot show that counsel was deficient for failure to object.

■ The petitioner also contends that his classification overstates the seriousness of his criminal history and that his attorney should have sought a downward departure. A court may, in an atypical case, depart downward where career offender status over-states the seriousness of the defendant's past conduct. *See United States v. Adkins*, 937 F.2d 947 (4th Cir.1991); U.S.S.G. § 4A1.3. Such departures, however, are reserved for "the truly unusual case." *Adkins*, 937 F.2d at 952. Nothing suggests that this is an atypical case: Hall does not argue that his presentence investigation report is in any respect inaccurate and he has a criminal history which includes convictions for larceny and burglary. Further, his sentence would be the same with a lesser criminal history category: his offense level of 44 would give him a life sentence even if he had a criminal history with zero points.

■ As for the two-point enhancement for the possession of a firearm, the Court finds that counsel was not ineffective for failing to object. This Court made a factual finding that Petitioner's firearm possession justified the two-point enhancement at the sentencing hearing. Several couriers testified that the Petitioner held guns at an apartment above Mecca Audio. His presentence investigation report also indicates that Petitioner carried firearms. Therefore, counsel at the sentencing were not rendering deficient performance by failing to object.

■ Finally, the Court finds the petitioner's contentions concerning the appellate performance of counsel devoid of constitutional significance. The jury acquitted the defendant charged with committing the murders of which photographs were shown and the Court of Appeals already found Hall's argument that the murder charge may have "inflamed the passions" of the jury to be without merit because "Hall himself was a drug kingpin, while his co-defendants were underlings. If anything, evidence introduced to convict Hall would have been prejudicial to his co-defendants, not vice-versa." *Hall*, 93 F.3d at 131. The Court does not find deficient performance or prejudice with respect to the failure to raise the issue of removing the visibly disturbed juror on appeal. The Court has already addressed the amount of drugs attributable to Hall and the two point enhancement. Accordingly, the Court finds the petitioner's claims do not successfully constitute ineffective assistance of counsel

and **DENIES** Petitioner's motion on that ground.

## C. The *Singleton* Issue and Due Process

Petitioner filed a motion to supplement his motion filed pursuant to 28 U.S.C. § 2255. The motion is predicated on the fact that the government obtained testimony from John Stokes, Ingrid Penick, Brian Dykes and Margaret Jones by promising, in return for truthful and complete cooperation, to consider filing a downward departure motion under § 5K1.1 of the sentencing guidelines or Federal Rule of Criminal Procedure 35(b). The petitioner argues that the governmental conduct violates 18 U.S.C. § 201(c)(2) because the promises were things of value given in exchange for trial testimony that was "essential to the Defendant's convictions." (Mot. pp. 5 ¶ 2). Petitioner also alleges that the government's promises violate his due process right to a fair trial. Petitioner Hall seeks to have his convictions reversed "since in the absence of this testimony the proof was insufficient to support the convictions." (Mot. pp. 5 ¶ 3).

Petitioner first contends that the government violated 18 U.S.C. § 201(c)(2) by impermissibly promising witnesses something of value in exchange for their testimony. The gratuity statute, or § 201(c)(2), states

> Whoever ... directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony, shall be fined under this title or imprisoned for not more than two years, or both. 18 U.S.C. § 201(c)(2)

While the Tenth Circuit construed the above statutory text in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), the decision was vacated and the Court granted a rehearing en banc. This Court declines to assign the decision precedential weight. The *Singleton* case is not the law in the Fourth Circuit, the decision has been vacated by the Tenth Circuit, and in *United States of America v. Eubanks,* —— F.3d ——, 1998 WL 801539 (4th Cir.1998), the Court of Appeals held that "it was not a violation of 18 U.S.C. § 201(c)(1994) for the Government to promise a witness [that] it would advise local authorities of the witness's cooperation in exchange for truthful testimony." *Eubanks,* —— F.3d at ——, 1998 WL 801539 at *5.

Petitioner argues that the term "whoever" is broad enough to draw the United States Attorneys within the class of persons affected by the statute. The United States Supreme Court, however, has held that a statute applies to the government or affects governmental rights only when the statutory text expressly includes the government. *See Nardone v. United States,* 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937). Further, the Court specified a situation in which broad statutory language does not encompass governmental actors: "where a reading which would include such [government] officers would work obvious absurdity." *Id.* at 384, 58 S.Ct. 275.

Historically, the Courts have supported the prosecutors' practice of exchanging leniency for testimony. *See The Whiskey Cases,* 99 U.S. 594, 9 Otto 594, 25 L.Ed. 399 (1878)(finding that an accomplice who acts in good faith and testifies fully and fairly as to his own acts and those of others is equitably entitled to a pardon and the prosecutor should join in such a recommendation). Courts have noted that "no practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." *United States v. Cervantes–Pacheco,* 826 F.2d 310, 315 (5th Cir.1987), cert. denied, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). That a "suspect's cooperation, by lightening the government's burdens of investigation and prosecution, is looked upon favorably by prosecutors and judges" is "very close to being a truism." *United States v. Baldwin,* 60 F.3d 363, 365–66 (7th Cir.1995), vacated on other grounds, 517 U.S. 1231, 116 S.Ct. 1873, 135 L.Ed.2d 169 (1996), on remand, 124 F.3d 205, 1997 WL 471328 (7th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 390, 139

L.Ed.2d 305 (1997). Similarly, the precedential requirement that the government disclose promises of leniency given to key witnesses in exchange for testimony implicitly acknowledges that the promises themselves are permissible. *Cf. Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)(holding that the government must disclose promises of leniency given to key witnesses).

The Court concedes that testimony may, in some instances, be given "for or because of" leniency promises, which fall within the scope of "anything for value." Nonetheless, the Court finds the practice consistent with the purpose of the blanket prohibition in the gratuity statute. The statute, or § 201(c)(2), precludes conduct that impairs truthfulness and enhances a witness's motivation to lie. Courts have found that an informant's interest in obtaining leniency creates "a strong motive to supply accurate information" where: (1) there are indicia of reliability; (2) they have nothing to gain from providing false information; and, (3) where they risk an additional charge for falsification. *See United States v. Miller,* 925 F.2d 695, 699 (4th Cir.1991). While the preceding three qualifications are also present when a plea agreement recipient testifies at trial, courts also have affirmed the reliability of such testimony by "reject[ing] the notion that the testimony of co-defendants and other interested witnesses was so likely to be unreliable that it should be excluded." *United States v. Dailey,* 759 F.2d 192 (1st Cir.1985). Similarly, the Court of Appeals has held that a promise of leniency does not necessarily make a confession involuntary. *United States v. Shears,* 762 F.2d 397, 401–03 (4th Cir.1985)(finding a confession voluntary irrespective of defendant's perception that leniency had been offered). Beyond the reliability of the information solicited, the contractual nature of the practice is not legally troublesome. Courts have held that "[i]f the government can excuse criminal or civil liability in settling a criminal case, surely it can use that power of compromise to obtain a guilty plea or to procure testimony in other proceedings. Both are legitimate objectives of plea agreements." *United States v. Barrett,* 505 F.2d 1091 (7th Cir.1974).

Here, the Assistant United States Attorney argues that applying § 201(c)(2) to standard plea agreements would "work obvious absurdity" because the consequence would contradict the workings of the criminal justice system throughout the last century. While the Court refuses to blindly and unquestioningly affirm all deeply entrenched legal precedents, it finds that the government's claim in this instance has merit. To construe the term "whoever" so as to include government prosecutors offering leniency in exchange for truthful and complete trial testimony works an obvious absurdity in view of the totality of the circumstances. Plea agreements do not necessarily or inherently impair a witness's truthfulness or enhance their motivation to lie. Even under the most cynical analysis, the justice system affords numerous safeguards that ensure the integrity of the testimony given. One is that the government may advise the court as to witnesses' truthfulness and forthrightness or failures to be forthright or truthful. Others include: (1) disclosure of plea agreements to the defense before trial; (2) cross-examination of cooperating witnesses; (3) jury instructions pertaining to false testimony and interested witnesses; and, (4) a witness's knowledge that agreements are based on truthful testimony, not the conviction of the target defendant.

Because the Court finds the practice of promising leniency in exchange for trial testimony consistent with the purpose of § 201(c)(2), analysis of the gratuity statute in relation to 18 U.S.C. § 2553(e), 28 U.S.C. § 994(n), Federal Rule of Criminal Procedure 35(b) and U.S.S.G. § 5K1.1, which all authorize the award of substantial assistance after testimony is given, is unnecessary.

Petitioner also argues that the government's alleged failure to keep testimony free of influence and to protect truthfulness violates his due process right to a fair trial. The Fifth Amendment provides that no one shall be deprived of life, liberty, or property, without due process of law. U.S. Const. Amend. V. The due process clause has both a substantive and a procedural component. As a matter of procedural due process, the

Court is concerned with reviewing the decision-making process to determine whether an individual's "life, liberty, or property" has been taken without "due process." U.S. Const. Amend. V. The Court may evaluate either the fairness of the procedure or the decision in an individual case. Rotunda & Nowak, *supra* § 14.6 at 355. As a matter of substantive due process, the Court is concerned with the power of the government to restrict an individual's freedom of action. Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, 2d § 14.6 at 356.

Courts have addressed promises of leniency vis à vis procedural and substantive due process. In fact, the Court of Appeals stated that "it has been settled for some time that due process requires a defendant be given the opportunity to present evidence concerning any promises, understandings or agreements between the government and a key prosecution witness relating to the witness' testimony" even when the government's promise of leniency was imprecise or tentative. *United States v. Mitchell,* 886 F.2d 667, 670 (4th Cir.1989). The courts have also held that the risk of perjury created by a defendant's alleged accomplices' plea agreements was not so great that a defendant's due process rights were violated by the admission of the accomplices' testimony at trial. *Dailey,* 759 F.2d at 196.

The Court does not find that Petitioner's life or liberty was taken without due process. The fairness of the proceedings was protected by Petitioner's opportunity to present evidence concerning any promises, understandings or agreements between the government and key prosecution witnesses relating to their testimony. Moreover, any risk of perjury was not so great as to violate Petitioner's due process rights.

With respect to reversing Petitioner's convictions, the Court finds that even in the absence of the disputed testimony, a rational jury could have found all the elements of the crimes for which Hall was sentenced beyond a reasonable doubt. The Court of Appeals stated that "the government easily proved that Hall oversaw the distribution of at least 225 kilograms of cocaine." *United States v.*

*Hall,* 93 F.3d 126, 131 (4th Cir.1996). Therefore, no reversal of the petitioner's convictions is justified.

### D. Intervening Change in Law

 Hall argues that he is entitled to a lesser sentence due to the 1994 amendment to U.S.S.G. § 2D1.1(c), Amendment 505, which reduced the maximum base offense level for a drug offense from 42 to 38. The amendment does not create an entitlement to reduction of sentence for a defendant. Section 3582(c)(2) of Title 18 provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(n), upon motion of the defendant…or its own motion, the Court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statement issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(2).

Likewise, Section 1B1.10(b) states that "in determining whether, and to what extent, a reduction in sentence is warranted for a defendant eligible under [3582(c)(2) ], the Court should consider the sentence that it would have imposed had the amendment(s)…been in effect at the time of the sentencing." Here, Petitioner was found responsible for over 255 kilograms of cocaine base. Using a base offense level of 38, Hall still would receive a four-level enhancement for his role as a supervisor plus the two point enhancement for gun possession. The guideline range for a new adjusted level of 44 would still be life imprisonment. Therefore, the motion for the reduction of sentence is **DENIED.**

### E. Discovery

In the Motion for Leave to File Discovery Requests, Petitioner requests production of investigative notes from officers, FBI 302s and DEA 6 field reports in order "to clarify and amplify Petitioner's claims of wrongfully suppressed documents under *Brady, Giglio*

and *Jencks* as outlined within his 2255 motion." (Mot.¶ 2). The items allegedly bearing on prosecutorial misconduct and perjury of government witnesses are: (1) all FBI 302 reports concerning coconspirators and witnesses of the government; (2) the arrest file of July 1992 and DEA 6 field reports, investigative reports and debriefing notes pertaining to Ingrid Penick; (3) state police and DEA 6 field reports of Eric Marshall; (4) DEA 6 field reports from Brian Dyke and Margaret Jones; and, (5) DEA 6 field reports and any related documentation concerning Dirk Ladson. Petitioner asserts in his Request for Production of Documents that items 1 to 5 were originally suppressed by the government.

Petitioner proffers that the documents would show: (1) that there were multiple separate, unrelated conspiracies; (2) that he did not manage or supervise persons in the unrelated conspiracies as alleged in the CCE count; (3) that he had no control or involvement with the drug amounts in the possession of Eric Marshall or Alfonso Miller since the two men were involved in separate unrelated conspiracies; (4) that Penick perjured herself as to Hall's involvement; and, (5) that persons and drugs associated with the Ladson case were unrelated to Hall's case.

The United States provided factual information which it felt conclusively dismissed the need for discovery for the majority of Petitioner's requests. According to the government, no FBI 302 reports were taken as to any of the persons listed in Petitioner's motion, the government turned over Penick's arrest file and Grand Jury testimony before trial, Marshall was a fugitive at the time of trial so no information was presented at trial concerning him which had impact on the instant case, the government already supplied the defense with the grand jury testimony of Dyke and Jones, and Ladson was a fugitive at the time of trial so the government was unaware of his incarceration or any other information concerning him. Additionally, the government alleges that Petitioner was aware of Ladson's name and location at the time of trial so needed information was available to the Petitioner.

As to Petitioner's remaining discovery contentions, the government responds that Petitioner fails to satisfy the "good cause" element of Rule 6(a). The government states that there is no basis for Petitioner's claim that the information requested will prove he was not involved with the listed parts of the conspiracy because Hall was convicted of the charges at trial and the Court of Appeals for the Fourth Circuit upheld his conviction based on the evidence presented against him. The Court of Appeals stated that " [a] number of Hall's co-conspirators, including several drug couriers, testified against him at trial. Many of them fingered Hall as a leader in the drug ring." *United States v. Hall,* 93 F.3d 126, cert. denied, U.S., — U.S. —, 117 S.Ct. 1087, 137 L.Ed.2d 220 (1997).

In his Reply to government's response to the motion for production of documents, the petitioner counters the government's assertion that it turned over the Penick arrest file prior to trial and qualifies his response by stating that "if his trial counsel received it, he withheld it from the case, an act in itself that would constitute ineffective assistance of counsel." Petitioner contends that a DEA 6 was provided to the defense by an attorney in a separate case and contains exculpatory material wrongfully withheld. Petitioner requests Penick's entire case file in order "to determine what material exists." With respect to Marshall, Petitioner states that the witness was an important component of Petitioner's case because Penick testified that Marshall cooked crack for the petitioner and that Marshall may have been one of the 5 or more persons for whom Petitioner was alleged to be managing in the CCE. Petitioner argues that had Marshall's files been turned over, defense counsel could have conducted an effective cross-examination as to Penick's statements about Marshall delivering and cooking cocaine for Petitioner. Hall states that the government did not give the defense Dykes and Jones grand jury testimony, while also stating in its response that Jones did not testify to the grand jury. Finally, Petitioner states that Ladson was named in the superseding indictment and that his presentence report reveals that he took the GED while in jail under his real name so the

government could have found him had it so desired.

 As a basic premise, defendants have no general constitutional right to discovery not provided for in the Federal Rules of Criminal Procedure. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

*Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), addressed the manner in which a defendant could have access to statements previously made by witnesses for the government. 2 Charles A. Wright, Federal Practice and Procedure § 417 (2d ed.1982). The principles from this case have been codified at 18 U.S.C. § 3500, known as the Jencks Act, and placed into the Federal Rules of Criminal Procedure. Fed. R.Crim.P. 26.2. A defendant may obtain the statement of a government witness after that witness testifies on direct examination. 18 U.S.C. § 3500(a), (b); Fed.R.Crim.P. 26.2(a). The government does not have to provide any portions of the witness statements that do not pertain to the substance of the witness's direct testimony. 18 U.S.C. § 3500(c); Fed.R.Crim.P. 26.2(c).

The United States Court of Appeals for the Fourth Circuit has held that the Jencks Act contemplates "a reasonable opportunity to examine [witness statements] and prepare for [their] use in the trial." *Holmes,* supra, at 40.

Nonetheless, Rule 6 of the Rules Governing 2255 Proceedings provides that a 2255 petitioner must demonstrate good cause in order to obtain discovery. Rules Governing 2255 Proceedings, Rule 6. Rule 6(a) states that:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law, if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rules Governing 2255 Cases, Rule 6(a), 28 U.S.C.A. foll. 2255.

 A defendant does not meet the "good cause" requirement when he has been provided with sufficient information and in a timely manner. *Townes v. Commonwealth,* 234 Va. 307, 362 S.E.2d 650 (1987), upheld, 68 F.3d 840 (4th Cir.1995). Good cause also requires specificity as to sought information. *See Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793, 1796–97, 138 L.Ed.2d 97 (1997) (citations omitted). "Petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence." *Munoz v. Keane,* 777 F.Supp. 282, 287 (S.D.N.Y.1991). A defendant must make at least a preliminary showing that requested documents contain exculpatory or impeaching information in order to compel production under *Brady* or *Giglio. See United States v. Roach,* 28 F.3d 729, 734 (8th Cir.1994).

In deciding whether a § 2255 petitioner is entitled to the benefits of *Brady,* courts have also considered whether the petitioner was free to discover sought information in preparation for his trial. *See United States v. Wilson,* 901 F.2d 378, 381 (4th Cir.1990). This is because no *Brady* violation occurs where exculpatory information is not only available to the defendant, but also lies in a source where a reasonable defendant would have looked. *Id.*

 Here, the Court finds that the reasons Petitioner proffers for producing the documents do not constitute good cause. The Court has already addressed the fact that consideration of multiple unrelated conspiracies is unnecessary because the government proved the requisite agreement and petitioner's membership in it to the satisfaction of the jury. As to whether Petitioner managed or supervised persons involved in unrelated conspiracies, the Court of Appeals has held that "nothing in the statute requires jury unanimity on which five people were in agreement, as long as each juror finds that some five persons were in agreement." *Hall,* 93 F.3d at 129. Petitioner's claims that he had no control or involvement with the drug amounts in the possession of Eric Marshall or Alfonso Miller, as the two men were involved in separate unrelated conspiracies, fails to constitute "good cause" because the evidence pertaining to those two individuals

were not the sole amounts for which Petitioner was held responsible. The Court of Appeals found that the amounts rightfully attributable to Petitioner justified his conviction. With respect to Penick, Petitioner made no preliminary proffer which suggests that the witness perjured herself as to Hall's involvement. At most, he indicated inconsistencies which would not raise the specter of false testimony. As to impeachment value, the Court has already found the Penick evidence immaterial.

Petitioner has no constitutional right to discovery. The Court of Appeals has already determined that Petitioner was not entitled to the Stokes notes as *Jencks* materials because they were not "a substantially verbatim" record of the witness's statement and were not adopted or approved by the witness. *Hall,* 93 F.3d at 130. Petitioner also has failed to demonstrate good cause for further discovery. The Court finds that Petitioner requests the forbidden "fishing expedition." Accordingly, the motions pertaining to discovery are **DENIED.**

■■■ Petitioner's claims that two confidential informants, CI2 and CI4, may in fact be individuals who testified that they had not received any form of immunity or plea agreement raises different issues. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) provides that the government must inform the defendant of promises of immunity given to a government witness. A decision not to require disclosure of a confidential informant is, however, within the discretion of the district court. *United States v. Blevins,* 960 F.2d 1252, 1260 (4th Cir.1992). The court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense and whether a proper balance renders nondisclosure erroneous depends on the particular circumstances of each case, taking into consideration the crime charged, possible defenses, possible significance of the informer's testimony and other relevant factors. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Requests for disclosure are "controlled by the well settled principle that the government is permitted to withhold the identity of a confi-

dential informant when 'the informant was used only for the limited purpose of obtaining a search warrant.'" *United States v. Gray,* 47 F.3d 1359, 1365 (*quoting United States v. Fisher,* 440 F.2d 654, 656 (4th Cir., 1971)). While the general rule is that the government is under no obligation to reveal an informant's identity, the general rule yields when a defendant shows that disclosure "will significantly aid his defense." *United States v. Smith,* 780 F.2d 1102, 1108 (4th Cir. 1985)(en banc). The burden is on the defendant to show that this balance tilts in favor of disclosure. *United States v. Blevins,* 960 F.2d 1252, 1258 (4th Cir.1992).

■■■ Although the informants here would arguably have been used for purposes beyond merely obtaining a search warrant, the petitioner has not met the burden of showing that disclosure is necessary. The petitioner may argue that the testimony of two witnesses who received immunity agreements stating that no such benefit had been conferred by the government would be perjury and affect the two witnesses' credibility, but the petitioner has made no affirmative showing of good cause justifying discovery as to the identity of the two informants. He made no preliminary proffer, other than his observation that the trial testimony of two witnesses was similar to information provided by the two informants, that the requested materials would be exculpatory or impeaching. Nothing suggests that disclosure of the two identities would significantly aid his defense or that his right to prepare his defense was impeded by not knowing. Therefore, the discovery request pertaining to revealing the two identities is **DENIED.**

## F. Evidentiary Hearing

Petitioner specifically requests an evidentiary hearing "because of several discrepancies in the facts and the government's conduct in withholding exculpatory evidence." (Mot.¶ 1). Petitioner seeks an evidentiary hearing in order to: (1) elicit testimony from the AUSA as to why he withheld the Stokes notes and failed to provide at trial FBI 302s and DEA 6s concerning exculpatory material pertaining to other separate unrelated criminal cases; (2) get Agent Kennedy to address

his previous testimony that Brian Dykes had never been to New York as well as other matters delineated in the § 2255 memorandum; (3) have Stokes testify as to who was present when he made the statements of drug use and why he changed his story between the interview and the trial; (4) have Penick testify as to deals received from the government in exchange for her testimony; (5) get Eric Marshall to testify concerning his interview statements and actual involvement in other ongoing conspiracies; (6) question Eileen Olds and Headley as to their trial representation since they did not submit declarations or affidavits; and, (7) enable Petitioner to testify about his interaction with the attorneys. On this motion, the government did not respond.

 Unless it is clear from the pleadings, files and records that a prisoner is not entitled to relief, § 2255 makes an evidentiary hearing mandatory. 28 U.S.C.A. § 2255. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir.1970); *See also United States v. Rowland*, 848 F.Supp. 639 (E.D.Va.1994)(finding that when the motions, files and record of the case conclusively show that the prisoner is entitled to no relief, no evidentiary hearing is necessary). The district court's determinations as to whether to hold a hearing under § 2255 and whether petitioner is required to be present at the hearing are reviewed for abuse of discretion. *Raines*, 423 F.2d at 529–30. Notwithstanding the court's wide discretion in the matter, "[t]here will remain, however, a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." *Id.* "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive." *Id.*

 Here, even assuming Petitioner's allegations to be true, he would not be entitled to relief. The motives of counsel are partially shielded by the wide discretion the law enables counsel to exercise in crafting his or her strategy. Moreover, some courts have found counsel's admission of mixed motivations insufficient to overcome the presumption of effective assistance where advice was sound. *See, e.g., Strickland* at 688–89, 104 S.Ct. 2052. As for the other grounds alleged, the Court has already discussed the factual findings and the resulting legal conclusions bearing on due process and effective assistance of counsel. Accordingly, the motion for an evidentiary hearing is **DENIED**.

## IV. CONCLUSION

For the aforementioned reasons, Petitioner's motions to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, to include the motion to supplement his § 2255 petition and for discovery and an evidentiary hearing are **DENIED**.

The Clerk is **DIRECTED** to mail a copy of this Order to Anthony J. Vegh, 720 Leader Building, 526 Superior Avenue, East, Cleveland, Ohio 44114–1401, I. Scott Pickus, Jackson, Pickus & Associates, P.C., 2201 West Broad Street, Suite 100, Richmond, Virginia 23220 and to Assistant United States Attorney Fernando Groene, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**